IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No.: 1:17-cr-987-JMC-1[1] |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| DOUGLAS WADE WILLIAMSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Douglas Wade Williamson is a prisoner currently serving a sentence of sixty (60) months in the Bureau of Prisons. (*See* ECF No. 52.)

This matter is before the court on Williamson's Motion to Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 58.) The United States of America (the "Government") expressly opposes Williamson's Motion to Correct Sentence (ECF No. 64) and moves for summary judgment on the merits. (ECF No. 65.) For the reasons set forth below, the court **DENIES** Williamson's Motion to Correct Sentence and **GRANTS** the Government's Motion for Summary Judgment.[2]

### I.    RELEVANT BACKGROUND TO PENDING MOTIONS

On October 17, 2017, the Grand Jury named Williamson in an Indictment containing the following two (2) counts:

---

[1] This matter is related to *Williamson v. United States*, Civil Action No. 1:19-cv-01035-JMC.
[2] The court observes that in addition to his Motion to Correct Sentence, Williamson also filed a Motion for the Court to Consider Supplemental Authority (ECF No. 67) requesting that the court consider the reasoning of the United States Court of Appeals for the Fifth Circuit in *United States v. Ainabe*, 938 F.3d 685 (5th Cir. 2019). The court considered *Ainabe* and does not find that it alters the outcome in this matter. Accordingly, the court **DENIES AS MOOT** Williamson's Motion to Consider Supplemental Authority. (ECF No. 67.)

1

(1) From at least in or about January 2006 and continuing through the date of this Indictment, in the District of South Carolina and elsewhere, DOUGLAS WADE WILLIAMSON and others, both known and unknown to the Grand Jury, knowingly did conspire and agree together to commit violations of federal law:

    A. knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and in furtherance of this scheme, did use and cause to be used the United States mail and common carriers, in violation of Title 18, United States Code, Section 1341;

    B. knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signals, pictures or sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343;

. . .

    a. The object of the conspiracy was for the defendant, DOUGLAS WADE WILLIAMSON and others, both known and unknown to the Grand Jury, using the U.S. Mail and interstate wires, to submit or cause to be submitted materially false applications for life insurance in an effort to have life insurance policies issued and to obtain money and property by means of false and fraudulent pretenses, representations, and promises;

. . .

It was further part of the scheme and artifice to defraud that the defendant, DOUGLAS WADE WILLIAMSON, made material misrepresentations on the life insurance applications to include: falsifying insurable interest, falsifying income and net worth, not checking the customer's driver's identification, not providing correct identifiable information on the policies, providing the beneficiary's mailing address as the insured's address, claiming that the insured had no other policies in force, falsifying or omitting health information, and fraudulently claiming the insured had mortgage(s) on their homes;

All in violation of Title 18, United States Code, Section 1349.

. . .

(2) On April 21, 2015, in the District of South Carolina, the defendant, DOUGLAS WADE WILLIAMSON, while under oath and testifying in a proceeding before Grand Jury 3, a Grand Jury of the United States in the District of South Carolina, knowingly made false material declarations;

. . .

All in violation of Title 18, United States Code, Section 1623.

(ECF No. 1 at 1–4.)

On April 30, 2018, the Government filed an Information charging Williamson with the following count:

(1) From at least in or about January 2006 and continuing through the date of this Indictment, in the District of South Carolina and elsewhere, DOUGLAS WADE WILLIAMSON and others, both known and unknown, knowingly did conspire and agree together to commit violations of federal law:

   A. knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and in furtherance of this scheme, did use and cause to be used the United States mail and common carriers, in violation of Title 18, United States Code, Section 1341;

   B. knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signals, pictures or sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343;

. . .

   a. The object of the conspiracy was for the defendant, DOUGLAS WADE WILLIAMSON and others, both known and unknown, using the U.S. Mail and interstate wires, to submit or cause to be submitted materially false applications for life insurance in an effort to have life insurance policies issued and to obtain money and property by means of false and fraudulent pretenses, representations, and promises;

. . .

It was further part of the scheme and artifice to defraud that the defendant, DOUGLAS WADE WILLIAMSON, made material misrepresentations on the life insurance applications to include: falsifying insurable interest, falsifying income and net worth, not checking the customer's driver's identification, not providing correct identifiable information on the policies, providing the beneficiary's mailing address as the insured's address, claiming that the insured had no other policies in force, falsifying or omitting health information, and fraudulently claiming the insured had mortgage(s) on their homes.

. . .

> (2) In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed;
>
>> a.  On or about April 3, 2014, the defendant, DOUGLAS WADE WILLIAMSON, wrote an application for a $250,000 policy on Mary G. Carroll, [o]n this application Williamson claimed Carroll made $57,000 a year and had a net worth of $284,000, knowing in truth and in fact this was untrue and false.
>
> All in violation of Title 18, United States Code, Section 371.

(ECF No. 36 at 1–3.) On April 16, 2018, Williamson signed a written Plea Agreement agreeing "to waive Indictment and arraignment, and plead guilty to an Information charging, conspiracy, in violation of Title 18, United States Code, § 371."[3] (ECF No. 29 at 1 ¶ 1.) On April 30, 2018, the court accepted Williamson's change of plea (ECF Nos. 40, 41) and sentenced him to a term of imprisonment of sixty (60) months imprisonment on December 7, 2018. (ECF Nos. 50, 52, 53.) At Williamson's sentencing, the Government provided the court with the following overview as to why the case against Williamson resolved itself in a 60-month sentence:

> But in discussions with defense counsel and to make this more efficient, and in the understanding that this does not affect the guidelines, while the government recognizes that Note 3(C) states that loss is an estimation, we are agreeing to the defense that we could prove up 9.5, but we will be happy to just go 3 million to 9.5 million. Again, it does not affect the guideline calculation. It just moves him from, after acceptance of responsibility, of level 27, it moves it to a 25, criminal history II, which puts him at a zone of 63 to 78 months. The statutory max for this count is 60 months, so it just renormalizes, I believe, to the next level or the next lowest one, which would be 51 to 60 months.

(ECF No. 56 at 3:1–13.) The court entered the Judgment on December 10, 2018. (ECF No. 52.) Williamson did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit.

---

[3] 18 U.S.C. § 371 provides that "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

4

On April 8, 2019, Williamson filed the instant Motion to Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 58.) The premise for Williamson's Motion is that "he received ineffective assistance of his plea counsel who did not adequately challenge the intended loss calculation submitted by the [G]overnment, and further did not bring existing case law to the [c]ourt's attention that would have militated in favor of a lesser finding of intended economic loss." (*Id.* at 1.) Because the Government calculated the loss amount "based on the cumulative amount of face values of the fraudulently obtained life insurance policies" (*id.* at 2 n.2), Williamson argues that his "[p]lea counsel rendered ineffective assistance of counsel by failing to call to the [c]ourt's attention—either by briefing the issue in a sentencing memorandum, or by raising the argument during Williamson's sentencing—that there are federal courts of appeal decisions that advocate for a different method of determining loss in connection with this kind of insurance fraud scheme." (*Id.* at 5.) Williamson further asserts that "[a]t the time of [hi]s sentencing proceeding, there were three cases from the Fifth, Eighth, and Second Circuit Courts of Appeal that plea counsel could have used to argue that the loss calculation in this case greatly overstated Mr. Williamson's culpability." (*Id.* at 8–9 (referencing *United States v. Bazemore*, 608 F. App'x 207 (5th Cir. 2015); *United States v. Jenkins*, 578 F.3d 745 (8th Cir. 2009); *United States v. Quatrella*, 722 F. App'x 64 (2nd Cir. 2018)).)

Subsequently, on May 31, 2019, the Government filed a Motion for Summary Judgment. (ECF No. 65.) The court considers below the merits of the parties' respective Motions.

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255, which states that a federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court.

### III.    LEGAL STANDARD

A.    <u>Motions to Vacate Generally</u>

A prisoner in federal custody under sentence of a federal court may petition the court that imposed the sentence to vacate, set aside, or correct the sentence. *See* 28 U.S.C. § 2255. The prisoner may be entitled to relief upon a showing that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his sentence or conviction pursuant to § 2255 bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004) (citing *Miller v. United States*, 261 F.2d 546 (4th Cir. 1958)). In ruling on a § 2255 motion, the court may dismiss the motion without a hearing where it conclusively shows from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief. 28 U.S.C. § 2255(b) (noting that a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief).

B.    <u>Ineffective Assistance of Counsel</u>

Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the assistance of counsel for his or her defense. U.S. Const. amend. VI. The purpose of the Sixth Amendment's guarantee of effective counsel is to ensure that a defendant has effective counsel at all critical stages of a criminal proceeding. *See Montejo v. Louisiana*, 566 U.S. 788, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227-28 (1967)). "To prevail on an ineffective assistance of counsel claim under the Sixth Amendment, [][Carter] must show both that (1) his counsel was professionally unreasonable and (2) his counsel's deficient performance

6

prejudiced [][Carter]'s defense." *United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984)). "A court need not address both components of this inquiry if [a] defendant makes an insufficient showing on one." *Furnace v. United States*, No. 4:11-cr-00014-RBH, 2011 WL 13177178, at *2 (D.S.C. Dec. 1, 2011) (citing *Strickland*, 466 U.S. at 697).

In regard to the performance prong, a defendant must identify specific acts or omissions of counsel that are not the result of reasonable, professional judgment. *Strickland*, 466 U.S. at 690. In light of all circumstances, keeping in mind that counsel's function is to advance the adversarial process, the court must determine whether the identified acts or omissions were outside the range of professional, competent assistance. *Id.* As such, "a [defendant] must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases, . . . .'" *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A court reviews "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Merzbacher*, 706 F.3d at 363 (quoting *Strickland*, 466 U.S. at 688).

Concerning the prejudice prong, a defendant must show that "counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In order to satisfy the 'prejudice' requirement [in the context of a guilty plea], the defendant

7

must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

## IV.     ANALYSIS

In this matter, Williamson moves the court to correct his sentence fundamentally complaining that his plea attorney, James Ervin, violated Williamson's constitutional rights by failing to make loss calculation arguments identified in *Bazemore*, *Jenkins*, or *Quatrella* to oppose the Government's calculations based on the face-values of the policies. (ECF No. 58 at 2, 5–10.) The Government opposes Williamson's Motion arguing that Ervin provided objectively reasonable assistance and the court should grant its Motion for Summary Judgment based on the following reasons:

> [D]efendant's contention is that while counsel did raise alternative means of loss calculation, he failed to raise two other means of loss calculation that were found in out-of-circuit and non-binding cases – this is not ineffective assistance of counsel. The Fourth Circuit has held that counsel is not deficient for failing to object to an issue on which the Supreme Court has granted a writ of certiorari, *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir.1995), or, more specifically in the case at bar, failing to be aware of and raise direct contrary authority of other circuits is not ineffective assistance of counsel, *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir.1983) ("While some may contend that counsel, nevertheless, should have been aware of and raised the recent law of a lone federal circuit court, we simply do not agree that failure to do so is indicative of incompetence.").[4]

. . .

---

[4] Williamson acknowledges his claim has not been addressed by the Fourth Circuit, but argues that the Government's position "allow[s] defendants in the Fourth Circuit to be held accountable for higher levels of intended economic loss than defendants in the Second, Sixth, and Eighth Circuits, undermin[ing] a core principle of the Federal Sentencing Guidelines -- that similarly situated defendants be treated similarly." (ECF No. 66 at 2 (citing 18 U.S.C. § 3553(A)(6)).)

8

> As the defendant's sole claim is inapposite of Fourth Circuit law, his counsel was not deficient and his claim should be denied.
>
> . . .
>
> [D]efendant's counsel greatly limited his liability through his negotiations with the Government to arrive at a plea that capped his exposure at 60 months. The defendant's counsel further negotiated a lessened loss amount to be proved up by the Government during the sentencing. *See* pg. 4 sentencing transcript, (the Government agreeing not to prove up over 9.5 million dollars due to defense counsel's negotiations). The resulting actions of defense counsel saved the defendant years time and cannot be understated.

(ECF No. 64 at 5, 6.)

At the outset, the court considered Williamson's claims in the context of the performance prong of the *Strickland v. Washington* test. In this regard, the court observes that Williamson's allegations of deficient performance by Ervin are expressly contradicted by Williamson's statements made under oath to the court during the change of plea hearing:

> Q. [H]as your attorney explained to you the nature of your charges, your maximum possible punishment as well as your constitutional rights?
> Q. Has your attorney explained to you the nature of your charges and your maximum possible punishment?
> A. Yes, ma'am.
> Q. Okay. And has your attorney gone over the evidence or discovery in this case that the Government would have used if this case were to go to trial?
> A. Yes, ma'am.
> Q. [H]ave you discussed the evidence or discovery in the case such that you could make a decision about whether it was better to go to trial or plead here today?
> A. Yes, ma'am.
> Q. And do you feel like your attorney has been responsive to any questions or concerns that you might have had?
> A. Yes, ma'am.
> Q. And are you satisfied with how your lawyer has represented you during this matter?
> A. Yes, ma'am.

(ECF No. 55 at 9:13–16, 18–19, 24; 10:2–4, 9, 23–25; 11:4–7, 12–14, 19.)

> Q. Do you understand generally issues related to the federal sentencing guidelines having discussed that with your attorney?
> A. Yes, ma'am.

9

> Q. Now with respect to this plea, has anyone forced or threatened you to plead here today?
> A. No.
> Q. Are you doing so freely and voluntarily?
> A. Yes, ma'am.
> Q. And this is after consultation with your attorney about the discovery in the case as well as what the indictment and information may hold, your elements of your offense, and your possible punishment?
> A. Yes, ma'am.

(*Id.* at 24:22–24; 25:4, 20–22, 26:2–4, 9–13, 18.)

Williamson's sworn statements to the court on their own are generally enough to demonstrate that Ervin's representation did not fall below an objective standard of reasonableness for purposes of denying Williamson's § 2255 Motion. *See, e.g.*, *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). However, in this case, the court also has before it a substantial record to judge the quality of Ervin's representation.

Upon its review, the court observes that Ervin expressly objected to the loss amount proposed by the Government in the Pre-Sentence Report "as entirely speculative and cumulative." (*See* ECF No. 43-1 at 4.) In addition, at Williamson's sentencing hearing, Ervin made the following arguments regarding loss during his presentation on Williamson's behalf:

> In this case, the main scheme and origin of all fraudulent information was from the applicants themselves. As an insurance agent, he is a procurer of policies and his job is to create a steady stream of policies that go to the insurance company and are further scrutinized by an underwriting process. So in many of the applications, his certification actually says that he is representing the information given to him by the applicant. So really, his culpability and the criminality of his actions is something I'd like for you to consider namely when coming up with calculating loss.
>
> And the Guidelines Section 2B1.1(b)(1) and its notes show that there are alternative ways to consider loss. To take a cumulative figure with regards to every insurance

> policy that may have fraudulent information on it we feel strongly overstates the defendant's actions and his culpability in this case.
>
> Furthermore, we don't have a firm number as to how many of these policies were actually granted, how many lapsed, how many failed to be continually premiums paid and honored, so therefore that gross number, "gross" meaning cumulative, is again overstated.

(ECF No. 56 at 15:10–16:5.)

> Your Honor, I understand the basis for the calculation of intended loss, and that being a cumulative number of all the policies. What I'm asking you to consider is the alternative, and the guidelines actually direct that there is an alternative way to look at this. And when you consider the actual victims being a corporate entity that had safeguards in place, such as underwriters and other people to scrutinize these applications, I think it greatly diminishes my client's culpability and criminality in his actions. That being said, we understand that those policies are worth X amount of dollars and we're not arguing with that.

(*Id.* at 16:9–19.)

> [B]ut regarding loss, again, the intended loss is vastly different from what the actual loss or the actual gain that he got was, and in this case, calculating actual gain to the defendant would be roughly $40,000 if you consider the commissions he made and kept and took home with him, as opposed to 3.5 to $9.5 million of policy limits that may or may not have been delivered to the applicants -- or beneficiaries, rather. And I ask you to consider that because of the vast difference in those numbers and the way, even if applied to the guidelines, I think that it's not unreasonable to consider a variance and to deviate from the guidelines when considering a sentence today. Again, the -- Mr. Williamson allowing these applications to go to underwriting, knowing that there's fraudulent information in these applications, there's also the knowledge that the underwriter may get wise to that and the application doesn't make it through the screen, you know, so in other words, it's not him taking the application saying, this is guaranteed to pay out a quarter of a million dollars regardless of his knowledge of the fraudulent information on that, he also has knowledge that there are other gatekeepers within the insurance company that could prevent that loss from actually happening. So it's -- it becomes a little gray whether or not the actual loss can be considered the beneficiary amount on the application versus what actually was granted, paid for, and realized. So I think that can be considered to greatly diminish the loss calculation. And I think what that goes to, Your Honor, is his intent and reasonable expectation at the time of the fraud as to what the loss would be. He did, and he's here to admit to allowing this fraudulent information on the application going forward, but again, whether or not he reasonably expected that fraudulent act to result in a loss is also to be considered because, again, he's got an underwriter above him that's going to screen it further. Whether or not that happened is, at that point, out of his hands.

(*Id.* at 19:11–20:22.)

> And he – he's here to take responsibility, Judge, but I believe, and I want to cite a case, it's from the Eleventh Circuit, *U.S. v. Livesay*, that a probational sentence well below the guidelines was upheld as reasonable based on his criminality and the fact that the guidelines and loss calculation greatly overstated his involvement and criminality in the case. And I think we have that here. I understand that the numbers are up there when you take in the cumulative loss calculation, but the guidelines do allow Your Honor and the Court to take an alternative view and an alternative calculation. And again, considering his actual gain, you're talking about $40,000, give or take, versus considering 3.5 to $9.5 million.

(ECF No. 56 at 23:22–24:10.)

In considering the aforementioned, it is clear that Ervin's arguments are consistent with the loss principles identified in *Bazemore*, *Jenkins*, or *Quatrella*,[5] but admittedly he did not have knowledge of these cases for specific reference. (*See* ECF No. 58-2.) Given that Ervin cited to *Livesay* in attacking the reasonableness of a sixty-month sentence and made arguments consistent with *Bazemore*, *Jenkins*, or *Quatrella* that the face value of the insurance policies should not equate to the amount of loss, the court is not persuaded that Ervin's representation of Williamson was objectively unreasonable. Therefore, the court finds that Williamson failed to demonstrate the requisite showing of substandard performance by Ervin under *Strickland*. Accordingly,

---

[5] All three decisions do what Ervin attempted to do in his sentencing presentation, *i.e.*, attack the conclusion that loss should equal the maximum value of the financial product at issue in the case. In *Bazemore*, the United States Court of Appeals for the Fifth Circuit held that "to prove intended loss, [the Governmen]t must prove that [defendant's] misrepresentations as to the applicants' financial status and third-party financing arrangements posed a risk of financial harm to the insurers that would not have existed if the information provided in the insurance applications were true." *Bazemore*, 608 F. App'x at 215–16 (citation omitted). In *Jenkins*, the Eighth Circuit found that "a reasonable estimate of intended loss could be made by totaling the face value of the death benefits on all of the fraudulently-obtained policies" minus "a reasonable estimate of the amount that the co-schemers intended to pay in furtherance of the scheme." *Jenkins*, 578 F.3d at 749–50 (citations omitted). Finally, in *Quatrella*, the Second Circuit observed that intended loss amounted to the "face-value intended loss figure" minus "premiums that the insurance companies would have received, as well as the compounded interest on that income," plus "the expenses and commissions the companies paid on the policies." *Quatrella*, 722 F. App'x at 68 (citations omitted).

Williamson's claim of ineffective assistance of counsel fails.

## V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** Defendant Douglas Wade Williamson's Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 58) and **GRANTS** the Government's Motion for Summary Judgment (ECF No. 65).  The court further **DENIES AS MOOT** Defendant's Motion to Consider Supplemental Authority (ECF No. 67).

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this matter, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the court **DENIES** Defendant Douglas Wade Williamson a certificate of appealability.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 1, 2020
Columbia, South Carolina